**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE GRAND JURY INVESTIGATIONS | Case No. 1:25-mc-174-JEB |

## <u>REPLY OF PETITIONER CHARLIE SAVAGE IN FURTHER SUPPORT OF HIS APPLICATION FOR ACCESS TO JUDICIAL RECORDS ANCILLARY TO GRAND JURY INVESTIGATION</u>

Petitioner Charlie Savage, a reporter at *The New York Times*, filed what he thought was a routine motion to unseal records related to the grand jury investigation into President Donald Trump's efforts to overturn the 2020 election. Those documents—records ancillary to subpoenas for the phone records of government officials, including members of Congress, in the days surrounding the January 6, 2021 attack on the U.S. Capitol—concern a topic that has been widely discussed by Congress, the media, and others. But the government now opposes their release, claiming that they are protected by Federal Rule of Criminal Procedure 6(e), a rule barring the disclosure of certain grand jury materials.

The government's brief minimizes the significant degree to which the public record already contains evidence that government officials have disclosed relevant information derived from or related to the grand jury investigation. It also downplays a critical fact: for months, a U.S. Senator has come into possession of documents that appear to be covered by Rule 6(e) and then released those documents to the public. The Department of Justice—no wallflower when it comes to condemning violations of Rule 6(e)—has said nothing. The release of sensitive documents from the Department over an extended period suggests a systematic effort by senior Department officials to gather and disclose records. The plausible inference is that the Department may be selectively releasing information via its allies while opposing public release of a fuller set of documents in this matter. Because the government cannot use Rule 6(e) as both a sword and a shield, this Court

1

should engage in judicial fact-finding to determine whether the government has authorized the release of this information and thereby waived the rule's protections.

**BACKGROUND**

**I.     A pattern of disclosures from the Department of Justice to a congressional ally.**

Since President Trump's second inauguration, internal Department of Justice documents—including grand jury materials arguably covered by Rule 6(e)—have routinely turned up in the hands of Senator Chuck Grassley. Senator Grassley has serially released these documents, sometimes characterizing them as "whistleblower disclosures."

One example will suffice. On September 16, 2025, at the start of a Senate Judiciary Committee hearing featuring testimony from FBI Director Kash Patel, Senator Grassley released a Department document listing grand jury subpoenas directed to banks as part of the election case. He characterized the document as a "new whistleblower record[]." Press Release, *Grassley Opens Senate Judiciary FBI Oversight Hearing, Releases Additional Records Demonstrating Political Weaponization and Misconduct at Biden FBI* (Sept. 16, 2025), https://tinyurl.com/2bzmayd7; Dep't of Just. Document, https://tinyurl.com/yc55cwfn. Director Patel did not express surprise or raise objections. Hearing Video (Sept. 16, 2025) at 1:18:30, https://tinyurl.com/yc4fan2a. At a House Judiciary Committee hearing with Director Patel the next day, Representative Andy Biggs entered the document into the record and then asked about the tools investigators in the election case used to view private communications. Director Patel replied: "I want to use this to highlight the fact that I'm continuing my promise to work with Congress to produce documents simultaneously and also conduct ongoing investigations. I'm giving you as much as I can, and I'll give you more when I can." Hearing Video (Sept. 17, 2025) at 1:02:54, https://tinyurl.com/2y5kksc3.

Then, on October 29, 2025, Senator Grassley released 197 grand jury subpoenas to banks and other third-party entities, many of which had been listed in the document he obtained the previous month. The released materials included several nondisclosure orders that appear to still be sealed. Dep't of Just. Documents, https://tinyurl.com/2wy3ab2b. He again attributed the files to "legally protected whistleblower disclosures." Press Release, *NEW: Jack Smith Subpoenaed Records for Over 400 Republican Targets As Part of Arctic Frost* (Oct. 29, 2025), https://tinyurl.com/mtktenmt.

The Times reported on the pattern of disclosures through Senator Grassley in January 2026, explaining that "self-described whistle-blowers . . . have passed on sensitive documents from Trump investigations, including grand jury information that by law is supposed to remain confidential." Glenn Thrush & Alan Feuer, *Under Patel, F.B.I. Scours Its Records to Discredit Trump Opponents*, N.Y. Times (Jan. 18, 2026), https://tinyurl.com/468ja3y4. As a source referenced in the article explained, "[T]he whistle-blower designation has provided [Senator Grassley] with a valuable way to release information that Justice Department officials could not otherwise make public." *Id.*[1]

Petitioner could locate no instance in which the Department condemned these disclosures. This contrasts with its general stance on unauthorized releases of internal documents. *See* Charlie Savage & Devlin Barrett, *Attorney General Lifts Ban on Subpoenaing Reporters' Notes in Leak Investigations*, N.Y. Times (May 1, 2025), https://tinyurl.com/4exehw24 ("The Justice Department, Ms. Bondi wrote, 'will not tolerate unauthorized disclosures that undermine President Trump's policies, victimize government agencies, and cause harm to the American people.'").

---

[1] Senator Grassley condemned The Times's reporting, accusing it of "[a]nti-[w]histleblower [b]ias." Press Release, *Grassley Defends Whistleblowers from Left-Leaning Media Smears* (Feb. 5, 2026), https://tinyurl.com/6tnyey6t. But he provided no further information about these purported whistleblowers.

**II. Disclosures of information related to the records at issue.**

Consistent with this pattern, information related to the records at issue here has been disclosed via Senator Grassley.

On October 6, 2025, Senator Grassley published a document showing that phone records of lawmakers were obtained in the election investigation. Press Release, *Biden FBI Spied on Eight Republican Senators as Part of Arctic Frost Investigation, Grassley Oversight Reveals* (Oct. 6, 2025), https://tinyurl.com/na6tf2s2. His press release did not specify the source, stating only that he "obtained" it. *Id.* But in a subsequent letter to the Department seeking more information about "the subpoenas," Senator Grassley and other lawmakers revealed that FBI Deputy Director Dan Bongino had disclosed the Executive Branch's acquisition of lawmaker tolling records at an October 6 briefing. Press Release, *Grassley and Johnson Lead Colleagues in Seeking Release of All DOJ, FBI Records Detailing Biden Administration's Targeting of Sitting Members of Congress* (Oct. 10, 2025), https://tinyurl.com/yra38jxz.

To the extent that any doubt remained, multiple sources have since confirmed that the phone records were obtained through grand jury subpoenas. At a press conference later on October 6, senators discussed how the phone records were procured: Senator Ron Johnson said, "I think it was approved by a court, correct, a grand jury?" and Senator Grassley replied, "Yeah." Press Conference Video (Oct. 6, 2025) at 13:05, https://tinyurl.com/mr42sny3. And, later in October 2025, lawyers for Special Counsel Jack Smith wrote to Senator Grassley "concerning the issuance of a grand jury subpoena for the toll records of eight Senators and one Member of the House of Representatives." Letter from Lanny A. Breuer & Peter Koski (Covington & Burling LLP) to Senator Grassley (Oct. 21, 2025), https://tinyurl.com/3653hdy8.

4

More information related to the subpoenas was released in the months that followed. Another lawmaker whose phone records were obtained, Representative Jim Jordan, released a copy of the subpoena, along with an apparently still sealed nondisclosure order. Dep't of Just. Documents, https://tinyurl.com/4s75xwmv. Representative Jordan posted this material along with a letter to Verizon seeking more information; he did not say who had provided him with the documents. Press Release, *Biden-Harris Justice Department Gathered Chairman Jordan's Phone Records for Over Two Years* (Nov. 20, 2025), https://tinyurl.com/bdc77a4x. And in November 2025, Senator Grassley posted a letter he had received from the Department along with internal emails in which prosecutors discussed which lawmakers to include in a "[t]oll [r]ecord [s]ubpoena." *See* Letter from Patrick Davis (Dep't of Just.) to Senator Grassley, https://tinyurl.com/yw3ur7cb (relaying documents).

Then, in December 2025, Smith testified before the House Judiciary Committee about the two criminal cases against President Trump. Ahead of that testimony, the Department provided a letter to Mr. Smith's legal team that put forward a narrow interpretation of Rule 6(e) regarding lawmaker phone-record subpoenas. This letter (attached as **Exhibit A**) was discussed at the start of his December 17 deposition and entered into the record. *See* Tr. of Jack Smith Dep. (Dec. 17, 2025) at 7-8, 12-13, https://tinyurl.com/ydskb3pk (discussing the letter). Mr. Smith acknowledged the matter in that deposition and in an open hearing on January 22, 2026 – stating, for example: "The non-content toll record subpoenas, we did secure nondisclosure orders for those subpoenas." Hearing Video (Jan. 22, 2025) at 2:06:30, https://tinyurl.com/mrx65kef. Petitioner is unaware of any complaint by the Department that Mr. Smith had gone beyond its guidance.

By February 10, 2026, Senators Grassley claimed to have identified 84 subpoenas sent to phone companies as part of the election investigation, ten of which "requested tolling records for

20 current or former Republican members of Congress." Press Release, *Grassley Demands Answers from Telecom Companies Who Turned Congressional Phone Records Over to Jack Smith* (Feb. 10, 2026), https://tinyurl.com/4bffnpfp.

**ARGUMENT**

**I.      The government overstates the scope of Rule 6(e).**

As a threshold matter, the Court should look closely at how the government characterizes the scope of Rule 6(e). In the government's telling, that rule is a near-total bar to the release of information related to the grand jury. See Gov't Br. at 3-4 (explaining that "[t]he Rule covers all information that would tend to reveal some secret aspect of the grand jury's investigation" (cleaned up)). But Rule 6(e)'s protections do not shield all material related to a grand-jury investigation. "[T]here is no per se rule against disclosure of any and all information which has reached the grand jury chambers." *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987). The touchstone of the inquiry is whether the material reveals "the inner workings of the grand jury." *Id.* at 583.

While the government acknowledges that Rule 6(e) has its limits, it has taken a particularly expansive view of grand jury secrecy here. But in a related context, when it apparently sees a benefit to disclosure, it takes a narrower view of the required secrecy. In the letter from the Department to lawyers for Mr. Smith ahead of his testimony before Congress (at which Republican lawmakers wanted to ask about the phone record subpoenas), the government made clear that "records presented to a grand jury . . . are not automatically protected by Rule 6(e)," including "records the grand jury obtained by subpoena." *See* **Exhibit A** at 2. The government likewise explained that "it would not violate Rule 6(e) to disclose non-public information and materials from the Department's investigations and prosecutions, so long as that information does not itself reveal the 'inner workings' of the grand jury." *Id.* As the Department's own analysis makes clear,

at least some records related to a grand jury's work fall outside the rule's coverage. The Court should review the materials with the right standard in mind—limiting withholding only to those materials that reveal the "inner workings" of the grand jury and that have not been subject to broad public disclosure, as set forth below.

**II.    To the extent that any materials fall within Rule 6(e)'s scope, the government may have forfeited the rule's protection through official disclosure.**

To the extent that any materials covered by Petitioner's application fall within the scope of Rule 6(e), properly understood, those materials may have lost the rule's protection through official disclosure. That can happen in two ways. First, there can be disclosures about what took place before the grand jury that has the effect of voiding Rule 6(e)'s secrecy requirements. Second, secrecy is also set aside when the government officially releases grand jury materials.

Here, much information about the grand jury has become public. Because Rule 6(e) is meant to preserve the secrecy of the grand jury process, its protection ceases to exist when material has "become sufficiently widely known" through an authoritative source, such as a witness or senior Department leadership. *In re Reps. Comm. for Freedom of the Press*, No. 24-115 (JEB), 2025 U.S. Dist. LEXIS 7264, at \*15 (D.D.C. Jan. 14, 2025) (Boasberg, C.J.); *see also In re North*, 16 F.3d 1234, 1245 (D.C. Cir. 1994) ("The purpose in Rule 6(e) is to preserve secrecy. Information widely known is not secret."); *Bd. of Governors of Fed. Res. Sys. v. United States*, No. 26-12 (JEB), 2026 U.S. Dist. LEXIS 52927, at \*34 (D.D.C. Mar. 11, 2026) (Boasberg, C.J.) (clarifying that "the disclosure must have been made by someone with authoritative knowledge of the matter" (cleaned up)). That has happened here. For instance, it is widely known that the grand jury in the election case issued subpoenas for phone records of lawmakers, accompanied by nondisclosure orders. *See supra* pp. 4-5; *see also, e.g.*, Evan Perez & Holmes Lybrand, *Jack Smith Investigation into January 6 Obtained Phone Records of GOP Lawmakers, Republicans Say*, CNN (Oct. 6,

7

2025), https://tinyurl.com/y9zfxmxa; Hailey Fuchs, *Cell Phone Providers Defend Turning Over Lawmakers' Call Records to Biden-Era DOJ*, Politico (Feb. 10, 2026), https://tinyurl.com/p4ca8naa.

Similarly, there has been some disclosure of related information by subpoena recipients. Letter from Robert S. Fisher (Verizon) to Senator Grassley (Oct. 24, 2025), https://tinyurl.com/5xk94sd9 (explaining that Verizon "identified a federal grand jury subpoena, dated May 25, 2023, from a DOJ attorney assigned to the Jack Smith Special Counsel's Office"); Letter from David Chorzempa (AT&T) to Senator Grassley (Oct. 24, 2025), https://tinyurl.com/j249ew57 ("In May 2023, Special Counsel Smith sent AT&T a grand jury subpoena that included a request for phone records associated with AT&T accounts for two other members of Congress."). And evidence in the public record already reveals disclosures of related information by government officials. *See supra* pp. 4-5 (describing Bongino briefing, Davis letter). As to these subjects, the disclosures have been such that the underlying documents must now be released.

But there is also a significant open question as to whether senior officials in the government have released grand jury materials themselves. Were there a single isolated disclosure that was disavowed by the Department and followed by no further revelations of grand jury-related material, it would be easy to conclude that the disclosure was not authorized and therefore not an official disclosure. That is not what has happened here. As recounted above, there have been repeated releases of materials over the past year. The pattern of disclosures and the silence of the Department raise questions about whether senior government officials have been involved. Like Senator Grassley's press release, the government's brief is "coy" about the origin of these disclosures. Gov't Br. at 6. Tellingly, though, it never denies that they came from Department

officials, or that Department officials authorized their release. Only the government knows whether these releases were authorized, and only the Court has the power to seek those answers. If the government wants to shield these documents from disclosure under Rule 6(e), it should be required to attest that senior officials within the Department of Justice or people acting on their behalf did not play a role in releasing this information outside the Executive Branch.

## **CONCLUSION**

For these reasons, Petitioner respectfully asks this Court to grant the application and release the responsive records to the extent they do not fall within Rule 6(e). To the extent that the materials fall within Rule 6(e), Petitioner respectfully requests that the Court require the government to attest as to whether senior officials within the Department disclosed these records (or authorized their disclosure) outside the Executive Branch and therefore placed them beyond the rule's required secrecy.

Dated: March 23, 2026

Respectfully submitted,

/s/ *David McCraw*
David McCraw (NY0200)
Legal Department
The New York Times Company
620 8th Avenue
New York, NY 10018
Telephone: (212) 556-4031
Facsimile: (212) 556-4634
Email: mccraw@nytimes.com

*Counsel for Petitioner Charlie Savage*